COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Humphreys
Argued by teleconference


BARBARA JANE SMITH

MEMORANDUM OPINION[*] BY
v.   Record No. 0491-01-2      JUDGE ROBERT J. HUMPHREYS
                                        JULY 23, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
W. Park Lemmond, Jr., Judge Designate

C. David Whaley (Anthony G. Spencer;
Morchower, Luxton & Whaley, on briefs), for
appellant.

Richard B. Smith, Senior Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


Barbara J. Smith appeals her convictions for three counts of

assault and one count of brandishing a firearm, after a bench

trial in which she was tried jointly with her husband, Charles

Smith.[1]  Smith contends the trial court erred in finding the

evidence sufficient as a matter of law to support the convictions,

and in excluding evidence establishing bias on the part of one of

the complaining witnesses.  Smith also argues that two of her

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this memorandum
opinion has no precedential value, we recite only those facts
necessary to our holding.

[1] See Charles Smith v. Commonwealth, Record #0492-01-2, this
day decided.

assault convictions and the brandishing conviction violated her constitutional right against double jeopardy.  For the reasons that follow, we affirm in part and reverse and remand in part.

## I.  Evidence of Bias

On appeal, Mrs. Smith first argues that the trial court erred in "exclud[ing] . . . evidence indicating bias of the complaining witness, [Cameron Gilliam]."  We agree.

During Gilliam's testimony, counsel for Smith asked, "Isn't it true you hired a lawyer to pursue a civil suit against Mrs. Smith?"  The trial court sustained the Commonwealth's objection, finding it was "not relevant."

As an initial matter, the Commonwealth contends Smith "never asked to proffer Gilliam's answer to the question" asked concerning the potential civil suit during trial.  However, the record demonstrates that Smith asked to make the proffer immediately after the trial court's ruling on the Commonwealth's objection in this regard and ultimately made it just after the final ruling, as instructed by the court.[2]  We find Smith's

_____

[2] After the trial, as he had been instructed to do by the trial court, Smith's attorney made his proffer concerning his cross-examination of Gilliam, stating:

> I wanted to proffer that to show his bias, his motive to recoup monetary settlement with regard to the lost animals, and his motivation behind his testimony and subsequent prosecution.

> I would further proffer that I have personal knowledge that he was contacted by an

- 2 -

proffer that Gilliam contacted an attorney regarding a civil suit to be sufficient.[3] Thus, we address the merits of Smith's argument.

It is a fundamental proposition that great latitude is allowed on cross-examination, and the general rule is that anything tending to show bias on the part of the witness may be drawn out.[4] Indeed, "[t]he right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute."[5] Thus, questions which attempt to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest are always relevant.[6] Accordingly, under the facts of this case, we hold

> attorney or that he contacted an attorney, rather, with regard to civil actions as that person attorney Herbert Maxey from Buckingham County contacted me specifically in regard to settlement of matters related to personal injuries and loss of the dogs.

[3] Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977) ("[I]n the interest of orderly litigation and appellate review, we hold that a unilateral avowal of counsel, if unchallenged, . . . of the testimony expected constitutes a proper proffer . . . .").

[4] Corvin v. Commonwealth, 13 Va. App. 296, 300, 411 S.E.2d 235, 238 (1991).

[5] Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984).

[6] Banks v. Commonwealth, 16 Va. App. 959, 962, 434 S.E.2d 681, 683 (1993).

the trial court erred in refusing to allow Mrs. Smith's counsel to question Gilliam regarding the potential civil suit.

Next, we must determine whether the trial court's error in restricting Mrs. Smith's right to cross-examination was harmless beyond a reasonable doubt.[7]  The correct inquiry in determining harmless error in cases such as this, "'"is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt."'"[8]  Therefore, our harmless error analysis is similar to harmless error review in cases of improperly admitted evidence, where the error is held harmless if the record contains "overwhelming" evidence of guilt.[9]  In this case, Gilliam's testimony is the "improper" evidence we evaluate, to determine its effect, if any, on the verdict.

Our analysis of the effect of Gilliam's testimony is guided by specific factors.  In determining whether the trial court's error in limiting appellant's right to cross-examine Gilliam was harmless, we evaluate:

> "'the importance of [Gilliam's] testimony in
> the prosecution's case, whether [Gilliam's]
> testimony was cumulative, the presence or

---

[7] Scott v. Commonwealth, 25 Va. App. 36, 42-43, 486 S.E.2d 120, 123 (1997).

[8] Id. (quoting Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641 (1990) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986))).

[9] Id.

- 4 -

> absence of evidence corroborating or
> contradicting [Gilliam's] testimony on
> material points, the extent of
> cross-examination [of Gilliam] otherwise
> permitted and, of course, the overall
> strength of the prosecution's case.'"[10]

We find the error was harmless with regard to the brandishing incident and related assaults by threat of bodily harm.  Indeed, Terry Collins, the other complaining witness, fully corroborated Gilliam's testimony as to the incident.

However, the only testimony concerning Smith's alleged physical assault of Gilliam (slapping), was provided by Gilliam himself.  There was no corroboration, and we find that the evidence was not otherwise "overwhelming" on that charge. Accordingly, we find the error, as it pertained only to that conviction, was not harmless beyond a reasonable doubt, and we reverse the conviction and remand for a new trial if the Commonwealth be so advised.

## II.  Sufficiency of the Evidence

Smith next contends the evidence was insufficient as a matter of law to sustain the remaining convictions for assault and brandishing of a firearm, as it did not exclude every reasonable hypothesis except that of guilt.  We disagree.

> When a defendant challenges the sufficiency
> of the evidence on appeal, the reviewing
> court must give the judgment of the trial

---

[10] Id. (quoting Williams v. Commonwealth, 4 Va. App. 53, 78-79, 354 S.E.2d 79, 93 (1987) (quoting Van Arsdall, 475 U.S. at 684)).

court sitting without a jury the same weight as a jury verdict. The appellate court has the duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidence to support it.[11]

Here, the trial court found the testimony of Gilliam and Collins to be credible. Indeed, the testimony of the law enforcement officers who arrived on the scene shortly after these events occurred, corroborated both Gilliam's and Collins' depictions of the Smiths' demeanor. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."[12]

Furthermore, contrary to Smith's argument, the reasonable hypotheses of innocence standard applies only in cases where the evidence is "wholly circumstantial."[13] This is not the case here. In fact, most of the evidence in the case against Smith was direct, not circumstantial. Accordingly, we do not find the convictions here were plainly wrong or without competent evidence in support thereof.

---

[11] McCain v. Commonwealth, 261 Va. 483, 492-93, 545 S.E.2d 541, 547 (2001).

[12] Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

[13] Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976).

III.  Double Jeopardy

Smith finally argues that the "testimony of a threat to, slap of and brandishing at Gilliam established one continuous assault only.  Likewise, the testimony of a threat to and brandishing at Collins established only one assault."  Smith contends that two of her convictions for assault must therefore be reversed, as they violate the Double Jeopardy Clause's protection against multiple punishments for the same offense.[14]  As we have reversed the physical assault conviction involving the alleged slapping of Gilliam, we consider only the brandishing and the related assault convictions.

"We have held that a single criminal act can be a violation of more than one statute."[15]

> In the single-trial setting, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977).

_____

[14] The Commonwealth contends Smith failed to raise the specific argument concerning multiple punishments at trial. However, we find that Smith's argument at trial sufficiently explained her contention in this regard.  See Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) ("The laudatory purpose behind Rule 5A:18 . . . is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.").

[15] Cartwright v. Commonwealth, 223 Va. 368, 371, 288 S.E.2d 491, 493 (1982).

\* \* \* \* \* \* \*

   The question resolves itself, therefore, into one of legislative intent where the issue is whether "the Legislative Branch" has provided that two offenses may be punished cumulatively.  In divining this intent, the test to be applied is "whether each [offense] requires proof of a fact which the other does not."  <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).  And, in applying this test, the two offenses are to be examined in the abstract, rather than with reference to the facts of the particular case under review.[16]

"Assault" is defined at common law as:

   [A]n attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by levelling a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act accompanied with circumstances denoting an intention coupled with a present ability, of using actual violence against the person of another.[17]

Conversely, "[t]o gain a conviction under Code § 18.2-282, the Commonwealth must prove two elements: '(1) pointing or

---

  [16] <u>Blythe v. Commonwealth</u>, 222 Va. 722, 725-26, 284 S.E.2d 796, 797-98 (1981).

  [17] <u>Bennett v. Commonwealth</u>, 35 Va. App. 442, 449, 546 S.E.2d 209, 212 (2001).

- 8 -

brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim.'"[18]

Thus, each offense here contains one element that the other does not. Assault requires a specific intent on the part of the actor to inflict, or threaten to inflict, some corporal hurt upon another that is reasonably calculated to inspire fear or apprehension in the victim.[19] However, an assault may occur without actual fear on the part of the victim.

On the other hand, brandishing, in addition to requiring the use of a firearm, requires the existence of reasonable fear in the mind of a victim. However, it does not require an intent on the part of the actor to inspire fear in the mind of the victim.

Accordingly, we find no double jeopardy violation in Mrs. Smith's conviction for two separate assaults consisting of a threat of bodily harm, directed at two separate individuals, and her conviction for the separate and distinct offense of brandishing.

_____

[18] Diffendal v. Commonwealth, 8 Va. App. 417, 420, 382 S.E.2d 24, 25 (1989) (quoting Kelsoe v. Commonwealth, 226 Va. 197, 198, 308 S.E.2d 104, 104 (1983)).

[19] Jones v. Commonwealth, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946).

We therefore affirm the remaining convictions for assault involving the threat of bodily harm, and brandishing of a firearm.

<u>Affirmed in part and reversed and remanded in part.</u>