# COURT OF APPEALS OF VIRGINIA

### Record No. 0212-25-1

GREGORY JAMES LOUISSAINT

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Chaney and Frucci

Opinion Issued April 28, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK**
William R. Savage, III, Judge

(Dorian L. Dalton, Senior Appellate Attorney; Virginia Indigent Defense Commission, on briefs), for appellant.

(Jason S. Miyares,[1] Attorney General; C. David Sands, III, Senior Assistant Attorney General, on brief), for appellee.

**MEMORANDUM OPINION**
**PER CURIAM**

Following a bench trial, the Circuit Court of the City of Suffolk convicted Gregory James Louissaint of: two counts of assault and battery of a law enforcement officer, obstruction of justice, and disorderly conduct. Louissaint appeals the denial of his motion to strike the assault and battery of a law enforcement officer charges, arguing that the evidence failed to prove he intended to touch the victims. Finding no error, we affirm the circuit court.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Suffolk Police Officers Wright, Labrecque, and Cornwell responded to reports of a roadside altercation. There, they found Louissaint "aggressively pacing" beside a vehicle while a woman sat crying in the front passenger seat. Louissaint was "standoffish," and Officer Wright asked him to stand at the back of the vehicle while he spoke with the woman. Louissaint "ignored" the officer's request and instead walked to the driver's side of the vehicle. However, when Officers Labrecque and Cornwell approached the scene, Louissaint complied and went to the back of the vehicle.

Officer Labrecque noticed that Louissaint had his hands in his pockets. Based on the "call notes" that the officers were responding to a "fight in progress," Officer Labrecque asked him to remove them; Louissaint did so briefly before putting them back in his pockets. Officer Labrecque repeatedly ordered Louissaint to keep his hands out of his pockets, but Louissaint refused to comply. Officer Labrecque informed Louissaint that he was being detained.

Louissaint became aggressive, "irritated with the situation," and resisted by "throwing his elbows back." Officer Wright ordered Louissaint to stop resisting as the other officers tried to restrain him. After a struggle, the officers managed to take Louissaint to the ground and restrain him. But Louissaint continued to struggle, and as Officer Cornwell tried to put him in handcuffs, Louissaint squeezed Officer Cornwell's hand and, with a "digging motion," scratched Officer Cornwell with his fingernail. The other officers were wearing gloves, and Officer Cornwell was

certain that it had been Louissaint, not the handcuffs or some other item, that cut him. It took three to five officers to detain Louissaint.

The officers took Louissaint to the hospital to be examined. There, Louissaint remained "very disrespectful" and "aggressive." Louissaint, sitting in a wheelchair near the nurse's station, stood up and was instructed by an officer to sit back down. When Louissaint did not comply, Officer Wright tried to force him back into the chair. Louissaint "got in [Officer Wright's] face" and called him a "bitch" "with force." As Louissaint did so, spittle from his mouth struck Officer Wright's face. The circuit court viewed video of the incident, but it was not entered into evidence and was instead treated as a demonstrative exhibit.[3]

ANALYSIS

Louissaint argues that he lacked the requisite intent to touch either Officer Cornwell or Officer Wright.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the

---

[3] The video was not made part of the record on appeal, despite defense counsel's request that it be "introduced into evidence for preservation." On brief, Louissaint insists that the record is complete as-is, without the video.

essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57. To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "At common law, any touching 'in anger, without lawful provocation,' however slight, including 'spitting in a man's face,' was sufficient to support a battery conviction." *Gilbert v. Commonwealth*, 45 Va. App. 67, 70 (2005) (quoting *Hardy v. Commonwealth*, 58 Va. 592, 601 (1867)). Spitting can inflict bodily harm because it is "an act that involve[s] physical contact and [is] deeply offensive." *Id.* at 71. If spitting is done "in a rude, insolent or angry manner," it may rise to the level of battery. *Id.* at 72. "Whether an act is done in a 'rude, insolent, or angry manner' is a finding of fact that this Court will not disturb on appeal unless the finding is plainly wrong or no evidence supports it." *Kelley v. Commonwealth*, 69 Va. App. 617, 628-29 (2019).

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Bryant v. Commonwealth*, 70 Va. App. 697, 714 (2019) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994)). "The state of mind of an accused may be shown by his conduct and by his statements." *Id.* (quoting *Hughes*, 18 Va. App. at 519). Intent "must be determined from the outward manifestation" of the defendant's "actions leading to usual and natural results, under the peculiar facts and

circumstances disclosed." *Id.* (quoting *Hughes*, 18 Va. App. at 519). "This determination presents a factual question which lies peculiarly within the province of the [fact finder]." *Id.* (alteration in original) (quoting *Hughes*, 18 Va. App. at 519).

The record before us shows that Louissaint was violently resisting arrest, throwing his elbows, and using a "digging motion" to scratch Officer Cornwell's hand with his fingernail. From that conduct, the circuit court could reasonably infer that the touching of Officer Cornwell was intentional. Then, at the hospital and clearly still dissatisfied with his situation, Louissaint continued to refuse orders from officers. The record shows that Louissaint did not simply state, or even yell, an insult at Officer Wright, but, after refusing an order to sit down, Louissaint got in Officer Wright's face and verbally insulted him with such force that he spit on the officer. As such, Louissaint's intent to spit on Officer Wright "may be inferred" from him getting into the officer's face and insulting him with force. *Davis v. Commonwealth*, 150 Va. 611, 619 (1928) ("Intention . . . may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional."). Therefore, viewing the facts in the light most favorable to the Commonwealth, the record contains evidentiary support for the circuit court's rulings.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*